WM. MUTCH *et al. vs.* HOLAU *et al.*

APPEAL FROM DECISION OF THE CHANCELLOR.

APRIL TERM, 1885.

JUDD, C. J.; McCULLY and AUSTIN, JJ.

A deed made by a woman to her brother, just before her marriage, held to be in fraud of the husband's rights, and set aside by the Court.

OPINION OF THE FULL COURT, BY McCULLY, J.

FOR the statement of the case and evidence we refer to the opinion of the Chancellor. In the argument made before the Court in banco it was said by the learned counsel for the defendants that if the matters of fact alleged in the plaintiffs' bill were established, there was no doubt but that the principles of equity would award the claim made. We have no doubt that the law as set forth by the Chancellor in his opinion above is well sustained upon reason and by the authorities cited. In our view the evidence does support the bill conclusively.

The defendants' version of the facts is entirely at variance with probability and reasonable conduct. According to the defense this young woman (plaintiff) of 19 years, in good health, of good education, a school teacher, with fair prospects in life, being the owner of a piece of real estate in Honolulu yielding $250 or $300 per year and worth $3,000, makes a voluntary deed of this property for the nominal consideration of $100, which was never paid, to her brother, he being a leper far advanced in the disease, living out the remnant of his unhappy existence in concealment in the house of the girl's guardians, the defendants in this case. And for what motive? In order to assist her brother, say the defense. As if it were not as easy to assist him by contributing a part of or all the income, and as if that would not be obviously better than to vest the property in one who was confined to his house or premises, who could not go abroad to make leases or collect rents or make improvements. He was living in expectation of near death.

And the same parties who set up this motive for the conveyance inconsistently procured a conveyance, for the paltry consideration of ten dollars, from him to themselves, whereby they expected to defeat the descent by inheritance to the first grantor, who should equitably have her own again after it had served the alleged purpose of better supporting her brother.

Now the plaintiff, William Mutch's, interest depends entirely upon the date of the deed. A strong circumstance to show that the deed was made after her betrothal is that she signs herself Myrtle, although misspelling it " Myrtel," a name adopted by her at the suggestion of her intended husband after their engagement to marry. There is no satisfactory evidence to show that she had ever used or been known by this name previously, and there is direct, credible and circumstantially probable testimony that the name was assumed only after the engagement had given him equitable rights against surreptitious conveyances of her property. If we take it as a fact that she never had that name until December, it is conclusive that the deed was not made in September. The acknowledging officer, J. S. Kaanaana, is dead. It is sufficient to say that we have to believe that he lent himself to the fraud of antedating the conveyance. It is merely consistent with his making the date in the certificate of acknowledgment September 5th, that he should cancel the stamp with the same date. There may have been made to him statements and reasons to induce him which did not imply a fraud on the part of any one.

Coming to the second deed we find the same fraudulent defense. The motive advanced for Polikua's refusal to rectify the mischief by a conveyance back to his sister is that he was angry because she had had her infant baptized in the Roman Catholic Church. It is proved that the baby was not born until a month and a half later.

We need only to touch upon these salient points in the case. The marks of fraud are broad and deep. The plaintiffs are entitled to the relief they ask for.

The decree is affirmed.

*S. B. Dole*, for plaintiffs.

*E. Preston*, for defendants.

Honolulu, April 24, 1885.

OPINION OF CHANCELLOR JUDD, APPEALED FROM.

In December, 1882, the plaintiff, William Mutch, was introduced to a Hawaiian girl, Mikahala Maau, then about nineteen years old, with a view to marriage.

Holau, defendant, had been appointed the guardian of this girl when she was eleven years old, and continued to act as such guardian, collecting rents, etc., until some time in 1883, when the guardian's accounts were presented to the Probate Court, but no satisfactory settlement was arrived at.

Meanwhile Mr. Mutch called upon Mikahala at Ewa, Oahu, where she was living with the defendants, her relatives.  Makanui, defendant, said he wished the girl to marry a white man and they preferred a carpenter, as the girl had a piece of land in Honolulu and the houses upon it needed repair.  There was a house adjoining which he wished Mr. Mutch to buy and move on to this lot and live upon in it.  Mr. Mutch was a carpenter.  This land is situated in the rear of the Government Dispensary, on Maunakea street, and had been left to Mikahala by will of one Kamaha, her grandfather.  It is worth from $2,500 to $3,000 and was then renting for from $200 to $250 per annum.  Mikahala also told Mr. Mutch that she had this property.

After a short acquaintance the parties agreed to marry.  Mikahala says that Makanui after her engagement told her that she ought to make a deed of this land to her brother, W. K. Polikua, in order to keep it from her intended husband, and that she finally consented to thus dispose of it, and copied a deed prepared for her, signed it and acknowledged it before J. S. Kaanaana, agent to take acknowledgments, who is now dead.  The deed is dated 1st September, 1882.  Mikahala says it was actually prepared, signed and acknowledged in January, 1883, about a week before her marriage, which took place on the 13th January.  The deed was signed in the chapel away from the house, and kept secret from Mr. Mutch.  It was delivered by Mikahala to defendants.  It was taken by Makanui to the registrar's office for record on the 20th of January.  It is signed by Mikahala by the name of "Myrtel K. Polikua."  It seems that she bore also the foreign name of "Michael," but on Mr. Mutch's saying during the courtship (December, 1882) that it was not a proper name for a woman and that

he would prefer to call her "Myrtle," she consented to adopt this name, and Mr. Mutch wrote it for her on a slip of paper. There is no evidence that she had ever used this name previous to this time. But as she signed this name to the deed it is conclusive evidence to my mind that the deed was made, as she says it was, subsequent to her engagement with Mr. Mutch, and not, as testified by defendants' witnesses, on September 1, 1882. Mr. Mutch says that Mikahala also told him of her property and that he never knew or heard of the conveyance until some time after his marriage.

Here, then, is a conveyance of a woman, in contemplation of marriage, of all her property without the knowledge of her intended husband and with intent to defraud him.

By all the authorities it must be held void as against the husband, as being in contravention of his marital rights and in disappointment of his just expectations.

To establish the equity in favor of the husband there must have been an engagement of marriage between them at the time of the conveyance of the wife's property. The conveyance must be made in contemplation of the particular marriage. It is essential also that the husband should, up to the moment of marriage, have been kept in ignorance of the transaction. Some authorities contend that he should have known that his intended wife possessed the property. All these ingredients exist in this case.

See Kerr on Fraud, p. 217; 1 Bright H. and W., p. 221; 1 Story Eq. Jur., Sec. 273; *Countess of Strathmore vs. Bowes,* 2 Brown Ch. 277; *Tucker vs. Andrews,* 13 Me., 125; *Ball vs. Montgomery,* 2 Vesey, 194.

There are other facts in this case which I now comment on.

The grantee of the deed, W. K. Polikua, was Mikahala's brother, but he was then, as he had been for a long time, a leper, and died of this disease April 26, 1884.

He was living under the roof of the defendants, who were supporting and caring for him. The consideration named in the deed is $100, but Mikahala says she was never paid this sum or any part of it. It is not likely that a leper hidden away from observation, supported by his friends, could have such a sum as $100. That Mikahala, who had some revenue from teaching school, also

contributed to her brother's support and comfort is proven by several letters from him to her.

While thus situated Polikua signed a deed of this property to Holau, defendant. It is dated September 12, 1883, but was not acknowledged until 21st April, 1884, five days before he died. The acknowledging officer, Anakalea Kauhi, says that he questioned Polikua very carefully three times before he took the acknowledgment, and was satisfied that the deed was in accordance with his wish.

The consideration stated is $10. Defendants say they paid it by a bag of rice worth $5 and some other articles of food. But they were supporting this leper all this time and would have in all likelihood furnished him with these if the deed had not been executed.

Mr. Mutch says that when he first heard of the deed to Polikua he asked Makanui to let him see it, but he refused, and then he ascertained at the Registrar's Office that it was recorded 20th January, 1883, after his marriage; that he went to see Polikua about it, and Polikua said he would deed the land back again to his wife, as it was hers, and at Polikua's request he went again to Ewa (two weeks before he died) with a deed for him to sign. When he got there he found the defendants at the door. He handed Polikua the deed, and he put it aside and wrote a letter to Mikahala, and afterward told Mr. Mutch that he did not sign the deed, as he was afraid he would be turned out of the house. The letter is dated 15th April, and Polikua says to his sister that in reference to her wish that he leave the property to her child, not to disturb herself, but that when he was dead she was to take the patent, and that she was his only heir and that no one else had any right to the property.

Mr. Armstrong says that Polikua told him he was afraid that Makanui would kill him if he deeded the property back to his sister.

The defendants say that he changed his purpose of conveying the land to Mikahala's daughter because the parents had had the child baptized in the Roman Church, whereas he was a Protestant. But it is evidently false, as the deed is dated the 12th September, 1883, and the child was not born until the 28th October.

It is clear from the testimony that both these deeds were procured by the defendants. They used the influence of Holau as guardian over Mikahala to persuade her to defraud her husband, and they used their power over a dying leper in their custody to make him sign a deed of a property worth $2,500 for a $10 consideration which was not paid.

The defendants were throughout the active perpetrators of these frauds and can in no sense be protected as *bona fide* purchasers.

The relief prayed for must be granted.

Decree accordingly.

*S. B. Dole*, for plaintiff.

*R. F. Bickerton*, for defendant.

Honolulu, October 23, 1884.